## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Angel Oak Mortgage Solutions LLC,

          Plaintiff,

v.

Victoria Mastronardi, Candy Davis, Eric Garcia, Scott Friedberg, and LendSure Mortgage Corp.,

          Defendants.

Case No. 1:20-cv-4583-MLB

_____/

## OPINION & ORDER

Plaintiff brings this action against Defendants for misappropriating its business information in violation of the Federal Defend Trade Secrets Act ("DTSA"), the Georgia Trade Secrets Act ("GTSA"), the Georgia Computer Systems Protection Act ("GCSPA"), and several other state laws. Defendants filed a partial motion to dismiss. (Dkt. 48.) The Court grants Defendants' motion in part and denies it in part.

# I.    Background

Plaintiff Angel Oak Mortgage Solutions LLC is a company that provides non-qualified mortgage loans.  (Dkt. 36 ¶ 15.)   Defendants Victoria Mastronardi, Candy Davis, Eric Garcia, and Scott Friedberg (together, "Individual Defendants") used to work for Plaintiff.  (*Id.* ¶¶ 24, 32–33, 37–38, 41–42, 49.)   In 2020, they went to work for Defendant LendSure Mortgage Corp.  (*Id.* ¶¶ 32, 37, 41, 49.)   Shortly before doing so, they sent a variety of Plaintiff's business information to their personal email accounts.  (*Id.* ¶¶ 56–61, 64, 66–69, 72–75.)   This information falls into three buckets: (1) information Plaintiff characterizes as confidential and trade secrets,[1] (2) information Plaintiff characterizes as *non*-trade secrets,[2] and (3) information Plaintiff declines to characterize either

---

[1] This information includes a "lists of brokers" (Dkt. 36 ¶¶ 58–59), "contact information for Certified Mortgage Group" (*id.* ¶ 60), "Pipeline Reports and Daily Reports" (*id.* ¶ 61), a "Closing Training Manual" (*id.* ¶ 64), a "Closing Checklist" (*id.*), a "Recording Guide" (*id.*), a "Pre CD User Guide" (*id.*), a "Loan Pipeline Dashboard" (*id.* ¶ 74), and "FAOMS Expirations" (*id.*).

[2] This information includes a "marketing video" (Dkt. 36 ¶ 57), a "[s]ample email for closers" (*id.* ¶ 64), documents allegedly misappropriated by Defendant Garcia (*id.* ¶¶ 66–69), and several "broker matrices" (*id.* ¶ 75).

way.[3]  Plaintiff claims some of this information "ended up on [Defendant] LendSure's email system."  (*Id.* ¶¶ 58, 65.)

Plaintiff filed this lawsuit in 2020.  It asserts claims for violations of DTSA (Count 1), violations of the GCSPA (Count 2), violations of GTSA (Count 3), breach of contract (Counts 4–5), tortious interference with contract (Count 6), breach of fiduciary duty (Count 7), civil conspiracy (Count 8), and aiding and abetting (Count 9).  (*Id.* ¶¶ 77–119.)  The crux of all these claims—beyond a few not at issue here—is that Defendants used Plaintiff's computer system to misappropriate Plaintiff's business information.  The Court assumes each claim encompasses all of Plaintiff's allegedly misappropriated information because nothing in the complaint says otherwise.   The exceptions are Plaintiff's trade-secret claims (Counts 1 and 3), which cannot include information Plaintiff itself characterizes as *non*-trade secrets, and Count 2, which Plaintiff pleads to include its "proprietary information that does not qualify as trade secret information."  The Court thus interprets Counts 1 and 3 to involve only

---

[3] This information includes "BSRT AOMS Bank Statement Worksheets" (Dkt. 36 ¶ 56), an "ICF Worksheet" (*id.* ¶ 72), and emails that Defendant Friedberg sent himself on October 6, 2020 (*id.* ¶ 73).

items identified in bucket one and Count 2 to involve only items identified in bucket two.

Defendants move to dismiss Plaintiff's GCSPA, fiduciary-duty, civil-conspiracy, and aiding-and-abetting claims (Counts 2 and 7–9) on the ground the GTSA preempts them. In the alternative, Defendant LendSure moves to dismiss Plaintiff's GCSPA and aiding-and-abetting claims (Counts 2 and 9) for failure to state a claim. Defendant Friedberg also moves to dismiss Plaintiff's DTSA and GTSA claims (Counts 1 and 3) for failure to state a claim.

## II.   Standard of Review

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiff's well-pled allegations must "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.   Discussion

### A.     Preemption (Counts 2 and 7–9)

Count 2 claims Defendants violated the GCSPA by "us[ing] improper means to access Angel Oak's computer[] system to take Angel Oak's proprietary information that does ***not*** qualify as trade secret information but still belongs exclusively to Angel Oak."  (Dkt. 36 ¶ 86.) Count 7 claims Individual Defendants breached their fiduciary duties by "stealing Angel Oak's information."   (*Id.* ¶ 107.)   Count 8 claims Defendants conspired to accomplish "the theft and continuing misuse of Angel Oak's information and property."  (*Id.* ¶ 111.)   Count 9 claims Defendant LendSure "knew that the individual Defendants' actions regarding Angel Oak's information constituted a breach of their fiduciary duties" and that Defendant LendSure "aided and abetted their actions by providing substantial assistance to them." (*Id.* ¶¶ 116–117.)  Defendants say GTSA preempts these claims in their entirety.  The Court concludes it preempts them only in part.

GTSA "supersede[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret."  O.C.G.A. § 10-1-767(a).  But it does not affect (1) "[c]ontractual

duties or remedies, whether or not based upon misappropriation of a trade secret"; (2) "[o]ther civil remedies that are not based upon misappropriation of a trade secret"; or (3) "[t]he definition of a trade secret contained in [another Georgia statute]."  O.C.G.A. § 10-1-767(b). On the surface, this means GTSA preempts any non-contractual claims that allege or require the misappropriation of a trade secret.[4]   But Georgia courts have gone further.  They say it also preempts "lesser and alternate" claims based on the same facts, particularly where the alternate claim involves the same misappropriated information as the trade-secret claim.  *Robbins v. Supermarket Equip. Sales, LLC*, 722 S.E.2d 55, 58 (Ga. 2012).

The Georgia Supreme Court made this clear in *Robbins*.  There, plaintiff asserted a single GTSA claim for misappropriation of its business drawings.  The trial court found the drawings were not trade

---

[4] *See Essex Grp., Inc. v. Southwire Co.*, 501 S.E.2d 501, 503 (Ga. 1998) ("The Act supersedes previous Georgia law on trade secrets."); *Bd. of Regents of the Univ. Sys. of Georgia v. One Sixty Over Ninety, LLC*, 830 S.E.2d 503, 510 n.13 (Ga. Ct. App. 2019) ("[T]he Trade Secrets Act superseded the common law tort of misappropriation [of trade secrets]."); *ProNvest, Inc. v. Levy*, 705 S.E.2d 204, 205–06 (Ga. Ct. App. 2010) ("[GTSA] explicitly abolishes all other causes of action predicated on the alleged misappropriation of trade secrets, except breach of contract.").

secrets.  But, acting sua sponte, it still awarded equitable relief under another statute.  The trial court thought GTSA did not preempt this relief because "the drawings were not ultimately found to be trade secrets under the act." *Id.* at 56, 58.  The Georgia Supreme Court disagreed.  It explained: "For the GTSA to maintain its exclusiveness, a plaintiff cannot be allowed to plead a lesser and alternate theory of restitution simply because the information does not qualify as a trade secret under the act." *Id.* at 58.  "Rather, the GTSA preempts claims that rely on the same allegations as those underlying the plaintiff's claim for misappropriation of a trade secret." *Id.*  "Since the trial court's award of general equitable relief under [the other statute] was based on the same conduct as the GTSA claim, i.e., the misappropriation of the drawings, such relief was preempted by [GTSA]." *Id.*

Applying these principles to our case eliminates some, but not all, of Counts 7–9.  Like Plaintiff's GTSA claim, Counts 7–9 allege Defendants impermissibly used Plaintiff's computer system to take information Plaintiff characterizes as trade secrets.  To this extent, Counts 7–9 "rely on the same allegations as those underlying the plaintiff's claim for misappropriation of a trade secret."  And GTSA

preempts them. *See Argos USA LLC v. Young*, 2019 WL 4125968, at *12 (N.D. Ga. June 28, 2019) (finding GTSA preemption because "Plaintiff relies on the same factual allegations of misappropriation for its GCSPA, civil conspiracy, conversion, and breach of fiduciary duty claims as its GTSA claim. Specifically, Plaintiff relies on facts that Young used Plaintiff's computer system to misappropriate Plaintiff's proprietary information."); *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1349 (N.D. Ga. 2017) (GTSA preempted non-GTSA claim because "Plaintiff relies on the same factual allegations of misappropriation for [both claims], namely, that [Defendant] used Plaintiff's computer system without authorization or in excess of his authorization to misappropriate Plaintiff's proprietary information."). Counts 7-9 also allege Defendants impermissibly used Plaintiff's computer system to take other information that Plaintiff declines to characterize as non-trade secrets. By doing so, Plaintiff seeks to avoid the GTSA's exclusivity in remedying the misappropriation of trade secrets by alleging these counts as "lesser and alternative theories" of recovery in case the items are determined not to constitute trade secrets. *Robbins*, 722 S.E.2d at 58. Or at least, Plaintiff raises the possibility of doing so. GTSA thus also preempts these claims.

8

But Counts 7–9 also claim Defendants misappropriated information Plaintiff explicitly characterizes as *non*-trade secrets. Count 2 also exclusively involves Defendants' alleged misappropriation of proprietary information that does not qualify as trade secrets. GTSA does not preempt these claims because they do not involve trade secrets or the same information as Plaintiff's GTSA claim. That is, unlike in *Robbins*, where all the claims involved the same drawings, the GTSA and non-GTSA claims in this case involve different information. So, unlike in *Robbins*, the non-GTSA claims are not simply backup theories that matter only if Plaintiff's GTSA claim fails. They have independent force because they seek relief for the misappropriation of different material.[5]

Defendants counter that "GTSA is the sole remedy [for] the alleged taking of [*any*] proprietary or confidential information," even if everyone agrees the information is not a trade secret and even if plaintiff does not

---

[5] Notably, *Robbins* cited several cases in which the plaintiff asserted GTSA and non-GTSA claims for misappropriation of the same information. *See B & F Sys., Inc. v. LeBlanc*, 2011 WL 4103576, at *24–27 (M.D. Ga. Sept. 14, 2011); *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1332, 1344–47 (N.D. Ga. 2007); *Opteum Fin. Servs., LLC v. Spain*, 406 F. Supp. 2d 1378, 1380–81 (N.D. Ga. 2005); *ProNvest, Inc.*, 705 S.E.2d at 205 n.1.

assert a trade-secret claim based on the same information.  (Dkt. 51 at 2.)  No Georgia court has gone this far.  But some federal courts have.  *See, e.g.*, *Heat Techs., Inc. v. Papierfabrik Aug. Koehler SE*, 2020 WL 12309512, at *6 (N.D. Ga. June 5, 2020) (GTSA preempts any claims "premised on allegations of idea misappropriation and the theft and misuse of confidential information"); *PHA Lighting Design, Inc. v. Kosheluk*, 2010 WL 1328754, at *11 (N.D. Ga. Mar. 30, 2010) ("If what was taken was intangible, proprietary information, then state law claims based on that taking [are] preempted.").  These courts say GTSA contains a "legislative judgment" that non-trade-secret information "should . . . flow freely in the public domain."  *PHA Lighting Design*, 2010 WL 1328754, at *11.  They say "the purpose of the GTSA" would be subverted if plaintiff did "not have to prove that the information taken by defendant was a trade secret, yet could still recover for misappropriation of intangible, proprietary information."  *Heat Techs.*, 2020 WL 12309512, at *6.

The Court declines to follow these courts.  Their decisions are not binding and, in this Court's view, are not persuasive.  GTSA does not say anything about the purpose or legislative judgment these courts ascribe

to it.  And "the best indicator of the General Assembly's intent is the statutory text it actually adopted." *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC.*, 862 S.E.2d 295, 301 (Ga. 2021).  If the legislature intended GTSA to preempt claims for the misappropriation of *any* information, "it could have and should have said so." *Id.*  Instead, it said the opposite: GTSA preempts claims involving "trade secret[s]," a narrowly defined statutory phrase that covers only a small universe of information.  O.C.G.A. § 10-1-767(a); *see* O.C.G.A. § 10-1-761(4) (defining trade secrets).  Indeed, the legislature went further and added explicitly that GTSA does *not* affect claims "not based upon misappropriation of a trade secret."  O.C.G.A. § 10-1-767(b)(2).  The Court "must presume that the General Assembly meant what it said and said what it meant." *Alston & Bird*, 862 S.E.2d at 301.  And, given that presumption, the Court cannot conclude the legislature meant "any information" when it said "trade secret."[6]

---

[6] *See Miller UK Ltd. v. Caterpillar Inc.*, 859 F. Supp. 2d 941, 947 (N.D. Ill. 2012) ("It would have been a simple matter . . . to write that the Act displaces common-law claims for the misappropriation of all confidential information.  But neither the Act's drafters nor the General Assembly did that—they rather chose to displace only 'laws of this State providing civil remedies for misappropriation of a trade secret.'"); *Burbank Grease*

If Defendants are right about GTSA's preemptive force, the misappropriation of non-trade-secret information is no longer actionable in Georgia (outside of contract law). It does not matter how egregious the misappropriation is or how significant the information might be. No remedy exists. That would be a dramatic development. *See Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404 (7th Cir. 2005) ("[I]t is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret.").[7] The idea that the legislature

---

*Servs., LLC v. Sokolowski*, 717 N.W.2d 781, 789–90 (Wis. 2006) (legislature could have said "confidential business information" instead of "trade secret," but it declined to do so and "we are not free to add to [the statute]").

[7] *See, e.g.*, *Salsbury Lab'ys, Inc. v. Rhone Merieux Lab'ys, Inc.*, 735 F. Supp. 1545, 1552 (M.D. Ga. 1988) ("[T]he law of Georgia prohibits an employee from disclosing confidential information if such disclosure is in violation of a relationship of confidence."); *Prudential Ins. Co. of Am. v. Baum*, 629 F. Supp. 466, 472 (N.D. Ga. 1986) ("some items of confidential business information not qualifying as trade secrets . . . may be protectible if the defendant garnered them by improper means or otherwise disclosed [them] without privilege"); *Am. Photocopy Equip. Co. of Atlanta v. Henderson*, 296 S.E.2d 573, 575 (Ga. 1982) ("One who, for the purpose of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information."); *Durham v. Stand-By Lab. of Georgia, Inc.*, 198 S.E.2d 145, 149 (Ga. 1973) ("[G]eneral confidential business and customer information . . . . is fully

12

effected such an important change through a statute that facially does not do so is in tension with the canon that lawmakers do not "hide elephants in mouseholes." *State v. Hudson*, 812 S.E.2d 270, 274 (Ga. 2018). It is also in tension with what the legislature has done since GTSA was passed. After Georgia enacted GTSA, it introduced legislation establishing a cause of action for wrongfully using a computer "with the intention of . . . [t]aking or appropriating any property of another." O.C.G.A. § 16-9-93(a)(1). At least one court has described this as "a cause of action for *misappropriation of intellectual property* through unauthorized access to a computer." *IPC Sys., Inc. v. Garrigan*, 2012 WL 12872028, at *10 (N.D. Ga. May 21, 2012) (emphasis added). If the misappropriation of trade secrets is actionable only under GTSA, and the misappropriation of other information is not actionable at all, it is unclear how much this new cause of action would really accomplish. Moreover, Georgia continues to keep on its books several other causes of action for information theft without any obvious indication that GTSA has gutted these remedies. *See, e.g.*, *Edible IP, LLC v. Google, LLC*, ---

---

protectable in the absence of contract if procured by improper means or otherwise disclosed without privilege, as in violation of relationships of confidence.").

S.E.2d ----, 2022 WL 451876, at *3–4, 8 & n.12 (Ga. Feb. 15, 2022) (noting Georgia's civil theft statute covers misappropriation of "intangible personal property," and Georgia's conversion statute covers "the conversion of certain intangible property," including "intellectual property stored on [a] laptop"). This, too, is in tension with the idea that GTSA is "the sole remedy available." (Dkt. 51 at 2.)

In the future, Georgia courts may well decide to read GTSA's preemption clause more expansively than the Court does here. But, until they unambiguously do so, the Court elects to follow the plain language of the statute. That language bars trade-secret claims and, per *Robbins*, "lesser and alternate" claims based on the same facts. Nothing more. To the extent Counts 2 and 7–9 allege misappropriation of information that Plaintiff explicitly characterizes as non-trade secrets—that is, the second of the three buckets—they are not trade-secret claims. And they are not based on the same facts as Plaintiff's trade-secret claims. So they survive GTSA's preemption clause. *See NCR Corp. v. Pendum, LLC,* 2018 WL 11343391, at *12 (N.D. Ga. Aug. 8, 2018) (GTSA preempted tortious interference claim "to the extent" the claim "relies on allegations of the use of NCR's trade secrets" but not to the extent it alleges interference

14

"in other ways"); *Tronitec, Inc. v. Shealy*, 547 S.E.2d 749, 755 (Ga. Ct. App. 2001) (GTSA preempted claims for conversion and theft "to the extent [they] were limited to trade secrets" but not to the extent they involved "personal property [that was] not a trade secret").

To be clear, the Court concludes GTSA preempts any claims in Counts 7–9 based upon those items Plaintiff has identified as trade secrets—that is, bucket one—as well as those Plaintiff has refused to identify as nontrade secrets—that is, bucket three.  Counts 7-9 may continue only as to those items Plaintiff has expressly identified as not involving trade secrets—that is, bucket two.  Count 2 may also continue in its entirety as it relies only upon the alleged misappropriation of the non-trade secrets items in bucket two.

## B.   Defendant LendSure

### 1.   Count 2

Count 2 claims Defendant LendSure "used improper means to access Angel Oak's computer[] system to take Angel Oak's proprietary information" in violation of the GCSPA.  (Dkt. 36 ¶ 86.)  It is undisputed that Defendant LendSure did not do these things directly.  But Plaintiff says the other Defendants did so pursuant to "an agency relationship

15

between [them] and LendSure." (Dkt. 49 at 17.)  Defendant LendSure moves to dismiss on the ground Plaintiff's agency theory lacks any support in the complaint.   (Dkt. 51 at 8–12.)   The Court grants Defendant's motion.

"In order that acts of an agent be binding on his alleged principal, a principal and agent relationship must be proved and it must be established that the agent acted within the scope of his authority." *J'Carpc, LLC v. Wilkins*, 545 F. Supp. 2d 1330, 1337 (N.D. Ga. 2008). "[A]n agency relationship can arise in three distinct ways: expressly, by implication, or through subsequent ratification by the principal of the agent's conduct." *Id.*

Plaintiff claims Defendant LendSure impliedly authorized Individual Defendants to act on its behalf and that Individual Defendants acted within the scope of their authority when they stole Plaintiff's information. (Dkt. 49 at 17–18.) This is simply a conclusory legal assertion and insufficient to avoid dismissal.  Plaintiff's only factual assertions for this conclusion are (1) Individual Defendants took Plaintiff's information shortly before leaving to work for Defendant LendSure, (2) some of this information ended up on Defendant

LendSure's email system, and (3) Defendant LendSure later tried to recruit Plaintiff's other employees, possibly using contact information obtained from Individual Defendants. (*Id.*) This is insufficient. The first two facts do not describe anything said or done by the alleged principal. *See Jackson Nat'l Life Ins. Co. v. Hutchinson*, 2015 WL 11198934, at *12 (N.D. Ga. Aug. 18, 2015) ("An implied agency relationship cannot arise in the absence of action by the principal."). The third fact occurred well after the alleged theft; involved the acquisition of employees, not data; and says nothing about the authority of Individual Defendants to bind Defendant LendSure in *any* way, much less in the way required here.

Plaintiff also claims Defendant LendSure ratified Individual Defendants' misconduct because it "retained the improperly taken material" on its email system. (Dkt. 49 at 18.) But, "[f]or ratification to be effective, the principal must *know* of the agent's unauthorized act and, with *full knowledge of all the material facts*, accept and retain the benefits of the unauthorized act." *J'Carpc*, 545 F. Supp. 2d at 1338 (emphasis added). Nothing in the complaint suggests Defendant LendSure even knew it had Plaintiff's information, much less that it

knew Individual Defendants stole the information in violation of the GCSPA.

At the end of the day, Plaintiff's agency theories are light on facts and heavy on speculation and suspicion.  That is fatal at the pleading stage.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level. . . .  The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.").  So the Court dismisses Plaintiff's GCSPA claim against Defendant LendSure.

### 2.   Count 9

Count 9 claims Defendant LendSure aided and abetted a breach of fiduciary duty by helping Individual Defendants steal their employer's information.  (Dkt. 36 ¶¶ 116–117.)  Defendant LendSure says Count 9 fails because Plaintiff does not "plead sufficient facts" in support of this theory.  (Dkt. 48-1 at 18.)  The Court agrees.

To state a claim for aiding and abetting a breach of fiduciary duty, Plaintiff must plead four elements: "(1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a

breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Insight Tech., Inc. v. FreightCheck, LLC*, 633 S.E.2d 373, 379 (Ga. Ct. 2006).  As stated, such a claim requires evidence the defendant "acted to procure a breach" of the fiduciary duty.  To procure "does not require the lending of assistance in the actual perpetration of the wrong," but requires the defendant give "advice, counsel, persuasion, or command . . . in procuring any person to commit an actionable wrong." *Intelligent Investment Int'l LLC v. Fu*, 2019 WL 1281204, at *9 (N.D. Ga. Mar. 20, 2019) (*quoting Insight Tech.*, 633 S.E.2d at 379 n.12).

Plaintiff's complaint alleges none of these things.  All it says is the Individual Defendants took some of Plaintiff's information with them to Defendant LendSure and Defendant LendSure later tried to recruit Plaintiff's employees.  That is nowhere near enough.  Most importantly, Plaintiff has not alleged Defendant LendSure advised, counseled,

persuaded, commanded, or in any other way procured the Individual Defendants to breach their fiduciary duties. Plaintiff also does not allege any facts to suggest Defendant LendSure acted with malice and intent to injure Plaintiff. This is to say the complaint does not plausibly allege Defendant LendSure aided and abetted the Individual Defendants' alleged breach of their fiduciary duties. The Court thus dismisses Count 9.

## C.   Defendant Friedberg (Counts 1 and 3)

Plaintiff claims Defendant Friedberg misappropriated its trade secrets in violation of DTSA (Count 1) and GTSA (Count 3). Defendant Friedberg says this claim fails because, even assuming he took Plaintiff's trade secrets, he did not "misappropriate" them within the meaning of DTSA and GTSA. (Dkt. 48-1 at 20–23.) The Court agrees.

"Under [GTSA], a claim for misappropriation of trade secrets requires a plaintiff to prove that (1) it had a trade secret and (2) the opposing party misappropriated the trade secret." *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1290–91 (11th Cir. 2003). "DTSA requires the same showing, but with the additional requirement that the trade secret is related to a product or service used in, or intended for use

20

in, interstate or foreign commerce." *Argos*, 2019 WL 4125968, at *5. Both statutes define misappropriation as "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent . . . ." 18 U.S.C. §§ 1839(5)(A)–(B); O.C.G.A. §§ 10-1-761(2)(A)–(B).

Plaintiff alleges Defendant Friedberg and the other Individual Defendants "acquire[d] and disclose[d] Angel Oak's trade secret information" and "took and presumably used at LendSure [information that] qualifies as trade secrets." (Dkt. 36 ¶¶ 79, 90.) These allegations are conclusory and, therefore, must be disregard. *See Putters v. Rmax Operating, LLC*, 2014 WL 1466902, at *3 (N.D. Ga. Apr. 15, 2014) ("[A] conclusory allegation of disclosure is not entitled to the assumption of truth."). And, while Plaintiff specifically alleges Defendants Mastronardi and Davis provided trade secrets to Defendant LendSure, (Dkt. 36 ¶¶ 58, 65), Plaintiff makes no similar allegation against Defendant Friedberg.

So the only question is whether Defendant Friedberg "acquired" the information "by improper means." Plaintiff says he did that when he sent

the relevant trade secrets from his work email account to his personal email account during his employment with Plaintiff.  Plaintiff says doing this involved "improper means" because it violated two provisions of a written agreement between Defendant Friedberg and Plaintiff.  (Dkt. 49 at 21–23.)   The first provision says Defendant Friedberg "shall not disclose, divulge, publish to others or in any way use or apply any Trade Secrets and/or Confidential Information except strictly in accordance with [his] duties as an employee of the Company."  (Dkt. 36-5 at 5; *see* Dkt. 49 at 22.)  The second provision says: "Upon the termination of [Defendant Friedberg's] employment with the Company, and at any other time upon the Company's request, [he] shall deliver to the Company all documents, writings, computer programs, diskettes, reports, information, data (stored in any medium), or any copies thereof, that constitute or pertain in any way to any Confidential Information." (Dkt. 36-5 at 3; *see* Dkt. 49 at 22.)

Plaintiff does not explain, and the Court does not see, how Defendant Friedberg violated these provisions by sending business information to his personal email account during his employment with Plaintiff.  Doing so did not "disclose" the information, "divulge" it, or

"publish [it] to *others*"—Defendant Friedberg simply sent *himself* information to which he already had access as Plaintiff's Inside Account Executive.  (*See* Dkt. 36 ¶ 43 ("Friedberg was responsible for mortgage loan origination sales activity and business development.  Accordingly, he thoroughly learned Angel Oak's trade secret information.").  And moving information from one storage location to another—both controlled by the same person—does not "use or apply" that information within the ordinary meaning of those words.[8]  You do not "use or apply" a product when you move it from the attic to the basement.

The other provision requires Defendant Friedberg to *return* Plaintiff's confidential information at Plaintiff's request or upon termination of his employment.  But this obligation says nothing about whether Defendant Friedberg can send himself information in the first place; it only demands that he give it back later.  And, even if Defendant Friedberg did fail to give it back when required (which is not Plaintiff's

---

[8] *See* https://www.merriam-webster.com/dictionary/use ("use" means "to put into action or service: avail oneself of: EMPLOY" or "to carry out a purpose or action by means of: UTILIZE"); https://www.merriam-webster.com/dictionary/apply ("apply" means "to put to use especially for some practical purpose," "to bring into action," or "to put into operation or effect").

theory), this would amount to improper *retention*, not improper *acquisition*. Thus, Defendant Friedberg's self-emails did not violate the provision about returning information and, even if he engaged in other conduct that did, that conduct was not the "means" by which he "acquired" Plaintiff's information. Either way, the provision does not support a claim under DTSA or GTSA. *See Putters*, 2014 WL 1466902, at *3 (no misappropriation where defendant improperly accessed trade secrets after his resignation because he "initially *acquired* the alleged trade secrets during his employment" in a permissible manner (emphasis in original)).[9]

---

[9] Even if Defendant Friedberg violated his employment agreement and this violation was the "means" by which he "acquired" Plaintiff's trade secrets, Plaintiff would still have to show that the violation constituted "*improper* means" under the statutes. GTSA defines "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means." O.C.G.A. § 10-1-761(1). DTSA includes a similar, but not identical, definition: "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A). Whether these definitions cover Defendant Friedberg's conduct is an open question, even assuming he violated his employment agreement with Plaintiff.

24

Plaintiff has not adequately pled Defendant Friedberg "misappropriated" its information within the meaning of DTSA or GTSA. So the Court dismisses Counts 1 and 3 against Defendant Friedberg.

## IV.  Conclusion

Defendants' Motion to Dismiss (Dkt. 48) is **GRANTED IN PART** and **DENIED IN PART**.  Counts 1 and 3 (DTSA and GTSA) are dismissed to the extent Plaintiff asserts them against Defendant Friedberg.  They can otherwise proceed.  Count 2 (GCSPA) is dismissed to the extent Plaintiff asserts it against Defendant LendSure.  It can otherwise proceed.  Counts 4–6 (breach of contract and tortious interference) can proceed.  Counts 7–8 (breach of fiduciary duty and civil conspiracy) are dismissed to the extent they involve allegedly misappropriated information the complaint identifies as trade secrets or information it declines to characterize as non-trade secrets.  They can otherwise proceed, specifically in regard to the items in bucket two. Count 9 (aiding and abetting) is dismissed.

Plaintiff's opposition brief seeks leave to file an amended complaint "to the extent the Court grants any part of Defendants' motion." (Dkt. 49 at 8.)  Defendants do not explicitly address or oppose this request.  (*See*

*also* Dkt. 53 at 5–6 (noting this potential request without objection in the joint preliminary report and discovery plan).)   So it is **GRANTED**. Plaintiff may, but need not, file an amended complaint no later than three weeks after the entry date of this Order.  Any amendments must be narrowly tailored to curing the deficiencies addressed in this Order. Other amendments, including new claims for relief, may be stricken or ignored.

With discovery now closed, and this Order now issued, the Court also **ORDERS** the parties to meet and confer promptly in a serious, good faith effort to resolve this case.  (*See* Dkts. 53 at 10 ("possibility of settlement after discovery"); 66 (discovery closed March 14, 2022).)  At least some of these discussions must be in person.

**SO ORDERED** this 23rd day of March, 2022.


MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

26